956 So.2d 769 (2007)
STATE of Louisiana, Appellee
v.
Bobby WILTCHER, Jr., Appellant.
No. 41,981-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2007.
*771 Mark O. Foster, Louisiana Appellate Project, for Appellant.
Robert W. Levy, District Attorney, Laurie Whitten, Cliff Strider, Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and DREW, JJ.
GASKINS, J.
The defendant, Bobby Wiltcher, Jr., was convicted of driving while intoxicated-fourth offense, a violation of La. R.S. 14:98. He was sentenced to 25 years at hard labor without benefit of probation, parole, or suspension of sentence, to be served consecutively with the sentence he was already serving for a probation revocation. The defendant appeals. We affirm his conviction and sentence.

*772 FACTS
Shortly after midnight on August 18, 2004, Investigator George Webb of the Lincoln Parish Sheriff's Office responded to a call regarding a tree blocking a portion of Highway 167 between Dubach and Ruston, Louisiana. As he approached the vehicles stopped on the highway, Investigator Webb noticed an individual standing outside of a vehicle urinating on the side of the road. Investigator Webb stopped his patrol car behind the vehicle and activated his emergency lights while shining his spotlight into the vehicle. The person who had been outside the vehicle got back inside it on the passenger side. Investigator Webb approached the vehicle with the intention of warning the individual about his behavior. As he neared the vehicle, Investigator Webb smelled a strong odor of alcohol.
Changing the focus of his stop to determining the source of the odor, Investigator Webb approached the driver's side of the vehicle. The defendant was in the driver's seat with his hands on the steering wheel, and the engine was running. Investigator Webb asked the defendant to exit the vehicle. The defendant complied with the request; when asked to produce his driver's license, he responded that he did not have one. Investigator Webb then advised the defendant of his Miranda rights. When asked how much he had had to drink that night, the defendant said, "I've had too much." The defendant agreed to submit to field sobriety testing and performed poorly on the tests administered by Investigator Webb.
After the testing, Investigator Webb placed the defendant under arrest and transported him to the Lincoln Parish Detention Center. After the defendant was advised of his rights regarding the Intoxilyzer 5000, the defendant refused to submit to the breath analyzer testing. A review of the defendant's criminal history revealed numerous arrests and convictions for DWI. The defendant was eventually charged with DWI-fourth offense.
The defendant was convicted as charged following a jury trial in February 2006. His motions for new trial and for post verdict judgment of acquittal were denied.
In May 2006, he was sentenced to 25 years at hard labor without benefit of probation, parole, or suspension of sentence, to be served consecutively with the sentence the defendant was already serving for a probation revocation. His motion to reconsider was denied.

SUFFICIENCY OF EVIDENCE
The defendant argues that the state failed to prove all essential elements of its case. In particular, he claims that the state did not prove he was actually operating his vehicle while intoxicated. The state contends that it presented ample evidence to support the conviction.

Law
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the *773 credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d 747.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/9/06), 941 So.2d 35.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, XXXX-XXXX (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
La. R.S. 14:98 provides, in part, that the crime of operating a vehicle while intoxicated is the operating of any motor vehicle when the operator is under the influence of alcoholic beverages or the operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood.
The term "operating" is broader than the term "driving." Operating in some circumstances may mean handling the controls of a vehicle. The definition of operating, however, should not dictate the result in all cases. The result should be determined by the sufficiency of the evidence in each particular case. City of Bastrop v. Paxton, 457 So.2d 168 (La.App. 2d Cir. 1984).
To convict the defendant of DWI, the prosecution need only prove that he was operating a vehicle and that he was under the influence of alcohol or a controlled dangerous substance. La. R.S. 14:98; State v. Presson, 39,688 (La.App.2d Cir.4/6/05), 900 So.2d 240; State v. Taylor, 38,574 (La.App.2d Cir.8/18/04), 880 So.2d 197. Some behavioral manifestations, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. State v. McDonald, 33,013 (La.App.2d Cir.3/1/00), 754 So.2d 382. It is not necessary that a conviction of DWI be based upon a blood or breath alcohol test, and the observations of an arresting officer may be sufficient to establish a defendant's guilt. Intoxication is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330 (La.1983); State v. Blackburn, 37,918 (La. App.2d Cir.1/28/04), 865 So.2d 912; State v. McDonald, supra.

Discussion
When asked how much he had been drinking, the defendant replied "I've *774 had too much." The defendant agreed to submit to field sobriety testing. Investigator Webb performed several tests including the walk-and-turn and the horizontal gaze nystagmus. The defendant performed poorly on all of the tests administered. In his testimony, Investigator Webb described in great detail the procedures employed during the testing. Investigator Webb noticed that the defendant swayed as he was standing outside the vehicle, his speech was slurred, and he was unsteady on his feet while walking during the testing. Considering the totality of the circumstances, including the odor of alcoholic beverages, the swaying, the slurred speech, and the poor performance on the field sobriety testing, Investigator Webb opined that the defendant was intoxicated and placed him under arrest for DWI.
After the defendant was arrested, Investigator Webb went back to the vehicle and observed full and empty Budweiser beer bottles throughout the passenger compartment of the vehicle. There were both opened and unopened bottles that still contained liquid. Investigator Webb testified he transported the defendant to the Lincoln Parish Detention Center. At the detention center, Investigator Webb advised the defendant of his rights relating to chemical testing. The defendant refused to submit to the testing and also refused to sign the rights form indicating his refusal. Investigator Webb completed the form, certifying the defendant's refusal to cooperate. Investigator Webb asked the defendant a series of standard questions including whether the defendant had any physical defects, whether he had taken any medicine within the last 24 hours, and whether he was driving the vehicle. The defendant responded negatively to each of these questions.
During a lengthy cross-examination, Investigator Webb was questioned regarding the field sobriety testing he performed. According to Investigator Webb, the defendant did not indicate he had any type of physical defect which could have altered the field sobriety testing results. Investigator Webb testified that he believed he employed the proper procedures during the testing process. He also stated that he did not believe that all results would be invalidated by a failure to adhere to the proper testing standards.
The state also presented the testimony of Courtney Reed, a passenger in the vehicle at the time of the defendant's arrest. Mr. Reed testified that the defendant picked him up from his trailer home sometime during the early evening prior to the incident. Mr. Reed stated he and the defendant rode around in the defendant's vehicle for three to four hours drinking beers with no particular destination in mind. The defendant was driving the vehicle and drank beers as the pair rode around. Mr. Reed testified they stopped to pick up Tommy Warrick and then decided to travel to Ruston. While in route to Ruston, the defendant pulled the vehicle over and stopped. The group had been sitting in the vehicle for a few minutes when they encountered the deputy.
Mr. Reed testified the defendant was arrested while he and Mr. Warrick were initially told they could leave. Thereafter, Mr. Warrick was found to have an outstanding warrant and was also arrested. Mr. Reed was issued a ticket for an open container violation. Mr. Reed stated he had consumed approximately one-half a case of beer prior to the encounter with the deputy, but he was unaware of how much the defendant had to drink that evening. The witness was able to state that he knew the defendant had been drinking after picking up Mr. Warrick, but was *775 unsure of the defendant's prior consumption. Mr. Reed testified he was unsure if the defendant was intoxicated. Mr. Reed admitted to having been convicted of DWI 11 times, and that he had been convicted of DWI-third offense 11 months prior to the defendant's instant arrest.
Billy Meredith was the defendant's probation agent when the defendant was arrested on the instant charge. Mr. Meredith testified the defendant made a statement to him admitting he had been drinking beer during the morning hours on the day of the arrest.
The defense called one witness to testify, Joseph Wright, a former correctional officer and shift supervisor for the Lincoln Parish Detention Center. According to Mr. Wright, he had no independent recollection of the defendant or his arrival at the detention center. Mr. Wright testified it was the general policy of the detention center to separate individuals who were intoxicated from the general population. Mr. Wright further testified that, through his experiences, he was able to recognize an individual who was intoxicated. In reviewing records from the detention center known as the "head count," Mr. Wright noted that the defendant had been brought to the detention center and placed in general population when he should have gone to a holding cell. Mr. Wright stated he did not believe the detention center's policy, regarding placement of intoxicated prisoners, was followed with the defendant. In attempting to explain this fact, Mr. Wright testified it was possible that the defendant had been inappropriately placed and not moved prior to a shift change. Mr. Wright stated he may not have come in contact with the defendant on the night of the arrest and this could have led to the defendant's incorrect placement. He also noted that they were busy at the detention center on the night of the defendant's arrest, booking in 14 individuals.
We find that the state's evidence was sufficient to establish the essential elements of the crime. While the defendant argues the evidence presented for each element could have been interpreted differently, this court should not reweigh the evidence or the credibility determinations made by the jury in this case. Evidence presented by the state was sufficient to establish that the defendant was in fact operating his vehicle when he encountered Investigator Webb. At the time of the encounter, the defendant smelled of alcohol, exhibited signs of being intoxicated, and admitted to having too much to drink. The state was able to substantiate the fact that the defendant was the driver of the vehicle through the testimony of a passenger in the defendant's vehicle. The jury chose to believe Investigator Webb's determination that the defendant was intoxicated. The investigator was extensively cross-examined as to alleged inaccuracies in the field sobriety testing; however, the jury apparently chose to dismiss the defendant's contentions that the testing was flawed and the results were therefore invalid. Additionally, the defendant stipulated to the fact that he had at least three previous convictions for DWI. In viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to prove the essential elements of the charged offense.
This assignment of error is without merit.

OTHER CRIMES EVIDENCE
The defendant alleges the trial court erred in allowing the state to present prejudicial evidence of other crimes evidence in that the state included four prior convictions for DWI in an attempt to establish the predicate offenses for the DWI-fourth *776 offense. The defendant argues that the trial court should not have permitted the state to identify the offense number for the prior convictions. The state contends the evidence was presented to establish the necessary predicate offenses and the jury was entitled to hear a reading of the entire bill of information for predicate offenses.

Law
La C. Cr. P. art. 483 provides that if it is necessary to allege a prior conviction in an indictment, it is sufficient to allege the name or nature of the offense and the fact, date, and court of the conviction. An indictment shall not contain an allegation of a prior conviction of the defendant unless such allegation is necessary to fully charge the offense.
Where an accused is charged as a second, third, or fourth DWI offender, the information or indictment must allege the prior convictions. State v. Franklin, 461 So.2d 640 (La.App. 1st Cir.1984). The prior DWI convictions used by the state in a repeat offender prosecution under La. R.S. 14:98 are essential matters of proof at trial. State v. Rolen, 95-0347 (La.9/15/95), 662 So.2d 446. Further, where there is a jury trial, the indictment charging the multiple offenses should be read to the jury. The prior offense or offenses must be proved as part of the state's case; otherwise the conviction will be set aside. State v. Franklin, supra.

Discussion
During the trial, the defendant agreed to stipulate to his prior convictions. The state placed the convictions on the record by reading directly from the bills of information, the nature of each charge, the adjudication date, and the sentencing date.
The state was required to prove all essential elements of its case. To carry the burden in this instance, it was necessary to prove that the defendant did in fact have at least three prior convictions for DWI within the 10-year cleansing period. By stipulation, the evidence of the defendant's prior convictions was entered into the record. The mere reading of the bills for the purposes of identifying the crimes for which the defendant had previously been convicted is not error in that it established an essential element of the crime. Inclusion of the reading of the number of the offense is not in error. The jury was merely presented with the defendant's offense of conviction in each instance. Despite the stipulation related to the evidence, the state had the opportunity to determine the manner in which it would present the evidence to substantiate its case.
This assignment of error is meritless.

SENTENCE
The defendant argues that the trial court erred in not sentencing him to substance abuse treatment and home incarceration under La. R.S. 14:98(E)(1)(a). The defendant also contends that the sentence imposed in this case is almost a maximum sentence which should be reserved for the worst type of offenders.

Inpatient treatment and home incarceration.
The sentencing provisions of La. R.S. 14:98 for DWI-fourth offense are as follows:
E. (1)(a) Except as otherwise provided in Subparagraph (4)(b) of this Subsection, on a conviction of a fourth or subsequent offense, notwithstanding any other provision of law to the contrary and regardless of whether the fourth offense occurred before or after an earlier conviction, the offender shall be imprisoned with or without hard labor for not less *777 than ten years nor more than thirty years and shall be fined five thousand dollars. Sixty days of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The court, in its discretion, may suspend all or any part of the remainder of the sentence of imprisonment. If any portion of the sentence is suspended, the offender shall be placed on supervised probation with the Department of Public Safety and Corrections, division of probation and parole, for a period of time not to exceed five years, which probation shall commence on the day after the offender's release from custody.
. . .
(4)(a) If the offender has previously been required to participate in substance abuse treatment and home incarceration pursuant to Subsection D of this Section, the offender shall not be sentenced to substance abuse treatment and home incarceration for a fourth or subsequent offense, but shall be imprisoned at hard labor for not less than ten nor more than thirty years, and at least three years of the sentence shall be imposed without benefit of suspension of sentence, probation, or parole.
(b) If the offender has previously received the benefit of suspension of sentence, probation, or parole as a fourth offender, no part of the sentence may be imposed with benefit of suspension of sentence, probation, or parole, and no portion of the sentence shall be imposed concurrently with the remaining balance of any sentence to be served for a prior conviction for any offense.
Sentencing under La. R.S. 14:98(E)(1) is unavailable to defendants who have previously been required to participate in substance abuse treatment and home incarceration as third offenders or who have previously received the benefit of suspension of sentence, probation, or parole as fourth offenders. State v. Curry, 39,153 (La.App. 2nd Cir.12/15/04), 889 So.2d 1202, writ denied, XXXX-XXXX (La.3/17/06), 925 So.2d 532; State v. Corbitt, 2004-2664 (La.App. 1st Cir.6/10/05), 917 So.2d 33, writ denied, XXXX-XXXX (La.2/3/06), 922 So.2d 1174.
In State v. Wiltcher, 36,491 (La.App.2d Cir.10/23/02), 830 So.2d 434, this court directed that the defendant in the instant case be resentenced in the Third Judicial District on two DWI-fourth offense convictions to receive the benefit of the 2001 amendment to La. R.S. 14:98, which allowed more lenient sentences for repeat DWI offenders. On remand, in May 2004, the trial court imposed upon the defendant concurrent sentences of 10 years at hard labor, all but 60 days of which were suspended, with a $5,000 fine, on both offenses. He was also placed on supervised probation for five years with specific conditions including home incarceration, electronic monitoring, plus both inpatient and outpatient treatment. The defendant was arrested on the instant DWI offense about three months later while on probation for these offenses, as well as another DWI offense for which he was sentenced in the 26th Judicial District Court in April 2004. In that case, the defendant pled guilty to DWI-third offense and was sentenced to five years at hard labor, with all but 30 days suspended, and was placed on supervised probation with special conditions of home incarceration, electronic monitoring, curfew restrictions, multiple weekly AA or NA meetings, limited driving privileges, and inpatient and outpatient treatment, plus a fine of $2,000.
The defendant complains that he did not receive the benefit of Subsection La. R.S. 14:98(E)(1)(a) and get intensive substance abuse treatment for his prior *778 DWI convictions. However, it should be noted that the defendant was precluded from receiving such treatment as a result of his commission of the current offense and resulting incarceration.
The defendant was properly sentenced under La. R.S. 14:98(E)(4)(a) and (E)(4)(b). These sentencing provisions statutorily mandate that the sentence must be imposed without benefit of suspension of sentence, probation, or parole, and the sentence must be imposed consecutively with the remaining balance of the sentence for the revoked probation. This portion of the defendant's sentencing argument is without merit.

Excessiveness
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The second inquiry involves a determination of whether the sentence imposed is too severe. This inquiry depends on the circumstances of the case and the background of the defendant. State v. McCall, 37,442 (La.App.2d Cir.8/20/03), 852 So.2d 1162, writ denied, XXXX-XXXX (La.12/17/04), 888 So.2d 858. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a needless and purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La. 1992); State v. Hogan, 480 So.2d 288 (La. 1985); State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864.
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. McCall, supra.
In imposing sentence, the trial court noted the defendant's extensive criminal history which dated back more than 20 years. While the defendant initially had problems with drugs and alcohol, in the past decade he was apparently involved mostly with alcohol. The court noted that the defendant had been shown leniency on many occasions. As previously noted, he was also on probation for three DWI convictions at the time of this arrest. Furthermore, his criminal history included simple battery arrests and convictions which were apparently also related to his use of alcohol.
The trial court emphasized its grave concern for the safety of the defendant and the safety of others as a result of his "severe substance abuse problem." The court also noted the risk of death or great bodily harm that the defendant knowingly created every time he chose to drink and drive. The court found that the defendant was unlikely to respond to treatment. Additionally the court held that a lesser sentence would deprecate the seriousness of his crime.
The defendant faced a maximum sentencing exposure of 30 years at hard labor. The trial court imposed a sentence which is in the upper range of the sentencing *779 spectrum; however, the sentence is not excessive in this instance. The record reveals that the trial judge considered the appropriate factors and tailored the sentence for this defendant. There is no showing that the trial court abused its wide discretion in imposing this 25-year sentence. When this repeat offender's crimes and the punishment imposed are viewed in light of the harm done to society, this sentence does not shock the sense of justice.
This assignment of error is without merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.