LOLLEY, J.
 

 11 James Harold Mitchell appeals his conviction and sentence by the First Judicial District Court, Parish of Caddo, State of Louisiana. A jury convicted Mitchell of the manufacture of a schedule II controlled dangerous substance (methamphetamine), a violation of La. R.S. 40:967(A)(1). After being adjudicated a third felony offender, Mitchell was sentenced to 45 years’ imprisonment at hard labor without benefit of probation, parole, or suspension of sentence with credit for time served. Following sentencing, this appeal ensued. We affirm the defendant’s conviction and sentence for the following reasons.
 

 Facts
 

 After a period of surveillance on a house in Caddo Parish, Louisiana by the Caddo Parish Sheriffs Office, Mitchell was arrested and subsequently charged by bill of information with the manufacture of a schedule II, controlled dangerous substance (methamphetamine), a violation of La. R.S. 40:967(A)(1). A trial of the matter commenced on February 13, 2009.
 

 At the trial, Sergeant Michael Gray of the Caddo Parish Sheriffs Office described his investigation of Mitchell. Sergeant Gray explained that in 2008 he began surveillance of a small house on Gilliam-Scott Slough Road in Caddo Parish, Louisiana after he received information that methamphetamine was being manufactured at that location. Through his surveillance work, he had become familiar with a red Nissan Maxima he had seen Mitchell driving intermittently in the area. On August 21, 2008, 12Sgt. Gray noticed the Maxima parked at the house. He also noticed a large anhydrous ammonia tank in a field near the house. Sergeant Gray knew anhydrous ammonia was used in the manufacture of methamphetamine.
 

 Sergeant Gray testified that he continued his surveillance of the house, and the next day as he was driving by he saw a pickup truck parked at the house with someone sitting in the passenger seat — the driver was not in the vehicle. Sergeant Gray called in the license plate number of the truck and found that the plates on the truck were associated with a different vehicle. Driving on, Sgt. Gray then noticed the same truck a few vehicles behind him, so he pulled to the side, allowing the truck to pass him. Sergeant Gray then followed the truck for a short distance before attempting to initiate a traffic stop. The attempted stop led to a high-speed chase that ended in an accident in Bossier Par
 
 *226
 
 ish. While still at the scene of the accident, Sgt. Gray contacted Sgt. Carl Town-ley of the narcotics division and requested he investigate the activities at the house. Sergeant Gray returned to the house where narcotics agents were interviewing Mitchell and his girlfriend.
 

 Sergeant Townley testified that when he and other narcotics agents arrived at the house, Mitchell answered the door then stepped outside to speak with the agents. Mitchell indicated he lived at the home and his girlfriend was in his bedroom. The defendant initially allowed the agents to enter the home, but then told them he wanted everyone outside. At that time, both Mitchell and his girlfriend were asked to exit the house for officer safety. Once outside, Mitchell agreed to allow Sgt. Townley to [3search the house. A search of the bedroom identified as Mitchell’s resulted in the confiscation of a piece of burned aluminum foil, which was known to be associated with the smoking of methamphetamine. Located in the bedroom closet was a can of “camp fuel,” which Sgt. Gray testified was also known to agents to be associated with the manufacture of methamphetamine. A cigarette package containing what appeared to be methamphetamine residue was also located in the house.
 

 Once the search of the inside of the house was complete, Sgt. Townley and Sgt. Gray relocated to the front yard to conduct a search of the Maxima parked in the yard of the house. Upon opening the doors of the vehicle, Sgt. Townley testified that he smelled a strong odor of ammonia, another product commonly associated with the manufacture of methamphetamine. A document bearing Mitchell’s name was also found in the interior of the vehicle.
 

 Sergeant Townley explained that he then moved to the trunk of the vehicle at which time he noticed Mitchell drop his head in a “defeated manner.” Noticing Mitchell’s reaction, Sgt. Townley believed Mitchell was aware that something would be found in the vehicle’s trunk. The trunk lock was missing and a piece of wire was in place of the lock. Sergeant Townley pulled the wire and the trunk opened revealing items known to be associated with the manufacture of methamphetamine. Mitchell and his girlfriend were handcuffed and
 
 Mircmdized.
 
 Mitchell then indicated he would “take the charge,” which Sgt. Townley explained he understood to mean that Mitchell would be accepting responsibility for the pending criminal charge.
 

 14Following the trial, a jury convicted Mitchell of manufacture of a Schedule II, controlled dangerous substance (methamphetamine).
 
 [1]
 
 Thereafter, the defendant was adjudicated a third felony offender and following a sentencing hearing, sentenced to 45 years’ imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The instant appeal followed.
 

 Discussion
 

 In his sole assignment of error, Mitchell argues that the evidence against him was insufficient to convict him of manufacture of methamphetamine. Specifically, he maintains that the state failed to adduce any evidence that he performed any act toward the manufacture of methamphetamine and that he was not linked to the lab found in the trunk of the vehicle parked in the front yard of the house
 
 *227
 
 where he was arrested. The state contends the evidence adduced at trial was “more than sufficient” to convict the defendant. We agree.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.05/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Murray,
 
 36,137 (La.App.2d Cir.08/29/02), 827 So.2d 488,
 
 writ denied,
 
 2002-2634 (La.09/05/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.02/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.05/09/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Allen,
 
 36,180 (La. App. 2d Cir.09/18/02), 828 So.2d 622,
 
 writs denied,
 
 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255,
 
 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Wiltcher,
 
 41,981 (La.App.2d Cir.05/09/07), 956 So.2d 769.
 

 Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of | fiother connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.
 
 State v. Lilly,
 
 468 So.2d 1154 (La.1985);
 
 State v. Mims,
 
 39,757 (La. App. 2d Cir.06/29/05), 907 So.2d 237.
 

 In all cases where an essential element of the crime is not proven by direct evidence, La. R.S. 15:438 applies. As an evi-dentiary rule, it restrains the fact finder in the first instance, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and then to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law.
 
 State v. Shapiro,
 
 431 So.2d 372 (La.1982);
 
 State v. Van Sales,
 
 38,138 (La.App.2d Cir.03/03/04), 867 So.2d 849,
 
 writ denied,
 
 2004-1305 (La.04/22/05), 899 So.2d 569.
 

 An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Jacobs,
 
 504 So.2d 817 (La.1987);
 
 State v. Adkins,
 
 39,724 (La.App.2d Cir.06/29/05), 907 So.2d 232,
 
 writ denied,
 
 2006-2514 (La.05/04/07), 956 So.2d 607.
 

 
 *228
 
 17Based on the evidence presented, the defendant’s argument of insufficient evidence to convict is meritless. Through the testimony of its witnesses, the State was able to prove that Mitchell was residing in a house that was under surveillance for possible drug activity including drug manufacturing and distribution. Sergeant Gray, in his surveillance of the house, had notified the narcotics task force of the information he was investigating. After Sgt. Gray noticed activity at the house which he deemed suspicious and consistent with a possible drug transaction, he had the license plate number of a truck checked and found the plate on the truck had been switched from another vehicle. Sergeant Gray’s attempt to conduct a traffic stop of the truck led to a high-speed chase that culminated with the truck crashing in Bossier Parish.
 

 While Sgt. Gray was at the scene of the accident, Sgt. Townley was following up on the possible drug activity at the house. Mitchell granted the officers permission to enter the home where they found his girlfriend in a bedroom and where contraband was later located. During the search, a piece of burned aluminum foil, recognized to be consistent with methamphetamine use, was found in Mitchell’s bedroom. Af-terwards, other suspected methamphetamine residue was also discovered in the home. As a part of the continued search, the agents focused on the vehicle parked outside the front of the house, which vehicle Mitchell was known to drive. When Mitchell saw that a search of the vehicle was imminent, his demeanor noticeably changed and he dropped his head as the trunk of the vehicle was opened. Inside the trunk, a portable methamphetamine lab was found. |s Items inside the trunk tested positive for trace amounts of methamphetamine. Also found in the trunk was Mitchell’s social security card. A document bearing Mitchell’s name and associated with a credit card was found in the interior of the vehicle. Sergeant Townley testified that Mitchell’s
 
 post-Miranda
 
 warnings indicated he was “taking the charge” for the items after the lab was found in the trunk, which Sgt. Townley took to mean that he was accepting responsibility for all of the items discovered inside the house as well as the mobile laboratory.
 

 While Mitchell argues that there is no connection to show he placed the items in the vehicle, the evidence presented shows that he had an awareness of the items found in the trunk as evidenced by his demeanor and actions once the search of the vehicle became imminent. Additionally, Mitchell was known to be the driver of the vehicle and his personal effects were found in both the trunk and passenger cabin of the vehicle. Clearly, the evidence here was sufficient to convict.
 

 Mitchell also argues that all reasonable hypothesis of innocence were not excluded in that his roommate, known only as “Tater” and who occupied the locked bedroom, could have placed the items in the trunk. However, other than Mitchell’s mention of the fact that he had a roommate, there is nothing to indicate that this person had access to the vehicle and/or had previously been associated with the vehicle. When viewing the evidence in the light most favorable to the prosecution, the state met its burden of proving the defendant was in fact guilty of manufacture of methamphetamine in violation of La. R.S. 40:967(A)(1). So considering, this assignment of error is without merit.
 

 |9Conclusion
 

 For the foregoing reasons, the conviction and sentence of James Harold Mitchell are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . At his trial, Mitchell failed to reappear after the trial court recessed for lunch break. Mitchell's attorney indicated he requested his client return at 12:45 p.m. At 1:15 p.m., court reconvened, Mitchell was not present, and defense counsel did not know of his whereabouts. Mitchell was afforded approximately five more minutes to appear and when he had not done so, the trial reconvened.