McCALLUM, J.
*425 The defendant, Dylan Magluilo ("Magluilo"), was convicted by a jury of second degree murder under La. R.S. 14:30.1 and was sentenced to life in prison. Magluilo now appeals, challenging only the sufficiency of the evidence. For the reasons stated herein, we affirm.
FACTS
The prosecution's lay witnesses. On September 8, 2015, a group including Magluilo, Danielle Davis, Todd Scruggs, Lacy Smith, Amanda Thompson, and Tiffany Chaffee booked a room at the Hilton Hotel in downtown Shreveport. All of these group members, except Davis and Magluilo, admitted using methamphetamine during the time frame surrounding this murder.
In his recorded interview with detectives, Magluilo admitted that he had a "gym" bag with him in the hotel room. Tiffany Chaffee saw that Magluilo had a black bandana wrapped around a gun and had a "duffle" bag in the hotel room.[1] Chaffee also testified that Magluilo was a "nervous wreck" and appeared to be high.
Seeking to obtain methamphetamine, Lacy Smith and Todd Scruggs contacted the victim, Mark Cornett, to arrange a purchase. Mark Cornett met them in the parking garage of the Hilton Hotel and took $200 cash as payment for the purchase of methamphetamine. He went alone to retrieve the methamphetamine and returned shortly without it or the money. Cornett indicated they would have to go to a casino near the Shreveport Airport (which is on Monkhouse Drive) to get the methamphetamine.
Cornett got in the driver's seat of his vehicle, while Todd Scruggs got in the front passenger seat and Lacy Smith got in the rear passenger seat. At Scruggs' direction, Cornett stopped in the parking lot of the Hilton and picked up Magluilo, who got in the rear driver-side seat carrying the bag. The four then proceeded along Interstate 20 and exited at Monkhouse Drive.[2]
Lacy Smith testified that, when the car stopped at the red light at the bottom of the exit ramp, she felt movement to her left. She turned and saw that Magluilo was holding a handgun to the back of Mark Cornett's head and then heard a loud bang. Todd Scruggs testified that he was looking to the right when the shot was fired. He heard a loud boom and saw a flash of light. Scruggs stated that after Magluilo shot Cornett and exited the car, Magluilo knelt down and put the handgun in the bag.[3]
After the shooting, Lacy Smith and Todd Scruggs fled the scene together. Magluilo made his escape separately. All three were on foot and contacted Ted *426 Wheat for a ride.[4] Wheat, accompanied by Brooklin Pickett, first went to Monkhouse Drive to pick up Magluilo, but could not find him because he was not where he said he would be. Before Wheat and Pickett left, Lacy Smith contacted them by phone. They picked up Smith and Todd Scruggs at the Moonrider Inn (located on Monkhouse Drive) and took them back to the Hilton Hotel.[5]
Magluilo called Ted Wheat again asking for a ride. Wheat obliged, picking up Magluilo at the Greenwood Road exit on Interstate 20 and taking him to Wheat's shop/residence. Initially, Pickett testified that Magluilo burned his pants at Wheat's shop because they had blood on them. Later, she partially recanted, stating that she actually did not know whose pants were burned and did not see Magluilo without pants.
Amanda Thompson testified that she picked up Magluilo from Ted Wheat's shop/residence and took him to her house. Tiffany Chaffee was already at Thompson's house at this point. Thompson and Chaffee both testified that Magluilo confessed to killing Mark Cornett. However, they reported slightly different explanations of Magluilo's motive.
Thompson testified that Magluilo said he killed Mark Cornett because Todd Scruggs told him to do so. Chaffee testified that Magluilo said he thought the car ride to the casino was a setup for Mark Cornett to kill him. Magluilo explained that he believed this because Todd Scruggs, during the ride, kept turning around and telling Magluilo that Cornett had a gun and was going to kill Magluilo. Magluilo told Chaffee that he shot Mark Cornett when Cornett stopped the car and bent over as if reaching for something. Both Chaffee and Thompson stated that Magluilo's story evolved from initially denying that he was the shooter to admitting he shot Mark Cornett.
The gun and bag were found at a construction site near the crime scene. Chaffee and Thompson stated that Magluilo had Thompson drive past the construction site where Magluilo had left the gun and the bag. Chaffee and Thompson testified that they drove by the site but did not stop.
Magluilo's police interview. Magluilo did not testify at trial. He did give a recorded statement to the police on September 27, 2015, which was introduced into evidence and played for the jury. On the recording, Magluilo admitted to being at the Hilton with Danielle Davis, Tiffany Chaffee, Amanda Thompson, Todd Scruggs, and a woman Magluilo did not know. He also admitted to having with him his gym bag containing "all" his clothing. He further stated that he took the bag when he left the Hilton. He sat directly behind Cornett, who was driving.[6] However, Magluilo denied being in the car at the Monkhouse exit on Interstate 20, and he denied shooting Cornett. Magluilo claimed that, because Cornett appeared high and was swerving all over the road, he got out of Cornett's car at the intersection of Fairfield Avenue and Common Street around *427 9:00 or 10:00 p.m. on September 8, 2015. From there he walked to his girlfriend's house at 1070 Boulevard Street while carrying the bag containing all his clothing.[7] Once there, Magluilo did not see anyone, and after unsuccessfully trying to contact his girlfriend by throwing rocks at her window, he called his sister, Danielle Coats. Between midnight and 2:00 a.m. on September 9, 2015, she gave him a ride back to the Hilton to get his truck.
The defense's witness . Danielle Coats, Magluilo's sister, was the sole witness called by the defense. Her testimony contradicted Magluilo's recorded statement. She also contradicted Chaffee and Thompson regarding whom Magluilo was with and his whereabouts after leaving Ted Wheat's shop/residence in the early morning hours of September 9, 2015.
Coats testified that her first personal contact with Magluilo on September 9, 2015, was when she went to pick up her vehicle from Ted Wheat's shop/residence around 3:40 a.m.[8] According to Coats, Magluilo left Wheat's shop/residence with her, rather than with Chaffee and Thompson, around 4:30 or 5:00 a.m. and they went to a Motel 6 in Bossier City. She testified that Magluilo was with her intermittently throughout the day. She contradicted his statement that she had dropped him off at his truck at the Hilton. She also stated that she was on the phone with Magluilo at the time of the shooting. She said she heard a gunshot followed by shouting and screaming. Subsequently, she heard a car door open and close after which the call ended.
The investigation . At 3:15 or 3:30 a.m. on September 9, 2015, Mark Cornett's vehicle was discovered stopped at a traffic light on the Monkhouse Drive exit ramp on Interstate 20. The engine was still running. Sergeant Tracy Mendels of the Shreveport Police Department reported to the scene to document and collect forensic evidence. She found Cornett dead in the driver's seat with the seatbelt on, a burned-down cigarette between his fingers, and his right foot on the brake pedal.[9] A cell phone was beneath his left leg on the floor. Cornett's wallet was found, but no gun or other weapon. Blood poured down the back of the driver's seat and sprayed across the backseat. A smear of blood on the backseat suggested that someone may have moved across the backseat and exited the rear passenger side door, which was found open. Sergeant Mendels photographed the exterior and interior of the vehicle.
Sergeant Mendels collected fingerprints from inside and outside the vehicle, but none of the prints were viable enough to aid in identification. She collected swabs of the surfaces and blood inside the vehicle. These were sent to the North Louisiana Crime Lab for testing, along with a spent Hornaday 9 mm cartridge casing that was found on the ground outside the rear passenger door. Sergeant Mendels testified that a parking voucher from the Shreveport Convention Center parking garage was found in the vehicle and the receipt was dated and time stamped for September 9, 2015 at 2:30 a.m., just an hour *428 before the body was discovered and 911 was called.
Sergeant Mendels testified that a bag was found at a construction site immediately North of the intersection of Monkhouse and Interstate 20. The bag contained "a lot" of men's clothing.[10] It contained live 9 mm cartridges, some of which were manufactured by Hornaday. The bag also had blood on it which was still wet. A 9 mm High Point semiautomatic handgun was found nearby at the same construction site. The gun had blood spatter on it, and some of the cartridges in its magazine were manufactured by Hornaday Ammunition.
Dr. James Traylor, the forensic pathologist who performed the autopsy, testified that the cause of death was a single, close contact gunshot wound to the back of the head. He recovered the bullet from Mark Cornett's head in two fragments. The bullet was a jacketed hollow point, and its jacketing had separated from its core.
Carla White, a forensic firearm analyst, test fired a cartridge from the handgun found at the construction site and determined that this gun fired the 9 mm cartridge found by Mark Cornett's car. White compared markings on the test-fired projectile with the fragments recovered from Mark Cornett's head. She determined that the handgun found at the construction site had fired the bullet recovered from Cornett's head.
Audra Williams, a forensic DNA analyst, testified that DNA recovered from the gun matched a Chase Anderson and another person who was not identifiable. Detective Sherita Holden, the lead detective in this case, testified that she investigated Chase Anderson's possible involvement in the murder and determined that he had an alibi witness who would place him elsewhere the night of the murder.
DISCUSSION
Magluilo's sole assignment of error is that the evidence was insufficient to support his conviction for second degree murder. La. R.S. 14:30.1(A)(1) defines second degree murder as "the killing of a human being... [w]hen the offender has a specific intent to kill or inflict great bodily harm." The issue in this case is not whether it was sufficiently proved that second degree murder was committed, but whether it was sufficiently proved that Magluilo is the person who committed the murder.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Carter , 42,894 (La. App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied , 08-0499 (La. 11/14/08), 996 So.2d 1086. The Jackson standard has been codified in La. C. Cr. P. art. 821 and is applicable in cases involving both direct and circumstantial evidence.[11]
Jackson does not provide the appellate court with a vehicle to substitute its *429 own appreciation of the evidence for that of the fact finder. State v. Pigford , 05-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 09-0310 (La. 11/6/09), 21 So.3d 297. "[I]t is the function of the jury, and not that of the appellate court, to assess the credibility of witnesses." State v. McKinney , 31, 611 (La. App. 2 Cir. 2/24/99), 728 So.2d 1009. "In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion." State v. Wiltcher , 41, 981 (La. App. 2 Cir. 5/9/07), 956 So.2d 769, citing State v. Burd , 40, 480 (La. App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied 2006-1083 (La. 11/9/06), 941 So.2d 35.
The arguments that Magluilo asserts in support of his assignment of error are as follows: (1) State witnesses Lacy Smith and Todd Scruggs have been in "much prior trouble." At the time of the trial, both were drug users and had narcotics offenses in their criminal histories. Additionally, Todd Scruggs' criminal history includes an armed robbery. (2) Todd Scruggs and Lacy Smith had the same opportunity to commit the murder as did Magluilo, since Scruggs and Smith were both in the vehicle at the time of the shooting. Thus, assuming they committed the crime, they have the incentive to falsely accuse Magluilo. (3) While DNA was found on the murder weapon, none of it proved to belong to Magluilo.[12] Additionally, the defense points out that there were no fingerprints linking Magluilo to the murder. Magluilo also asserts that (4) "many of the state's witnesses' testimony made no sense or was conflicting with evidence," and that "in this case, there is internal contradiction and irreconcilable conflict."
Magluilo's two arguments regarding state witnesses Todd Scruggs and Lacy Smith amount to nothing more than attacks on their credibility. The first argument seeks to impeach their credibility on the basis of their prior felony convictions. The second argument is also a credibility attack, and is premised on the assumption that Scruggs and/or Smith committed the murder. From that assumption, Magluilo reasons that these witnesses therefore had the incentive to falsely accuse him as a means of escaping prosecution themselves. McKinney, supra , makes clear that it is the function of the jury - not that of the appellate court - to determine witness credibility. Thus these arguments are meritless.
Magluilo's argument that the evidence was insufficient because his DNA was not proved to be on the murder weapon and there was no fingerprint evidence linking him to the murder is also meritless. There is no requirement that the state prove second degree murder with fingerprint or DNA evidence. La. R.S. 14:30.1.
Finally, the defense argument that the testimony of "many of the state's witnesses...made no sense or was conflicting with evidence," and "in this case, there is internal contradiction and irreconcilable conflict" also lacks merit. The defendant cites no specific facts whatsoever to support these conclusory allegations. Nor do *430 we find any evidence in the record which would potentially render the evidence insufficient. We do note that Lacy Smith and Todd Scruggs contradicted each other regarding (1) whether there was conversation in the car prior to the shooting; (2) whether, in the days following the shooting, Scruggs was supplying Smith with methamphetamine or vice versa ; and (3) whether Scruggs told Magluilo not to shoot Smith right after Cornett was shot. Bearing in mind the totality of the evidence, these contradictions are immaterial and do not render the evidence insufficient. This is especially so when the evidence is viewed in the light most favorable to the prosecution.
Tiffany Chaffee saw Magluilo with a gun wrapped in a black bandana and carrying the gym/duffle bag at the Hilton shortly before the murder. In the parking lot of the Hilton, Todd Scruggs and Lacy Smith saw Magluilo get into Mark Cornett's vehicle carrying the bag. Lacy Smith testified that during the ride, the bag sat on the backseat between her and Magluilo.
Lacy Smith testified that she saw Magluilo shoot Cornett in the back of the head. Todd Scruggs testified that he heard a loud boom and saw a flash of light; he looked left and saw that Mark Cornett was shot in the head, and saw Magluilo put the gun in the bag after he exited the car.
The bag Magluilo was carrying was found at a construction site near the crime scene still wet with blood. It contained men's clothes and Hornaday 9 mm bullets, i.e. , the same type of ammunition that was used to kill Cornett. The bag and clothing found inside the bag contained DNA (blood) belonging to the victim. The gun used to shoot Cornett was also found hidden within 50 feet of the bag. Magluilo admitted to Tiffany Chaffee and Amanda Thompson that he shot Mark Cornett and that he left his bag and the gun at a construction site near the crime scene.
The evidence presented at trial established that Magluilo shot Mark Cornett with specific intent to kill or inflict great bodily harm. Expert testimony by Dr. Traylor established that Mark Cornett was killed by a single, close-contact gunshot to the back of the head. Magluilo shot Mark Cornett in a manner that left no doubt that he would die.
Expert testimony by Sergeant Mendels - as well as observations by the eyewitnesses to the shooting and the citizens who discovered the crime - established that Mark Cornett was killed inside the vehicle. There was no damage to the outside of the vehicle. There were no windows shot out, and nothing appeared to be missing from the victim, not even his wallet. There was no evidence of a drive-by shooting, robbery, or even a struggle. There was no evidence that suggested Cornett was an aggressor. There was no gun or other weapon recovered from the car or Cornett's person to support an argument that Magluilo was acting in self-defense.
Finally, Magluilo's own sister testified to hearing a gunshot accompanied by screaming while on the phone conversing with him. She then heard a car door open and close before the phone call ended.
Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime to be proved beyond a reasonable doubt. The evidence at trial was constitutionally sufficient to convict Magluilo of second degree murder.
CONCLUSION
For the reasons stated above, Dylan Magluilo's conviction and sentence for second degree murder are AFFIRMED.

As described in more detail infra , the state introduced a picture of the bloody "gym" or "duffle" bag found near the crime scene as State Exhibit 45. At trial, Tiffany Chaffee identified the bag depicted in State Exhibit 45 as the same bag that Magluilo had with him in the Hilton hotel room. For the sake of clarity only, we refer to it as the "bag" for the remainder of this opinion.

Lacy Smith testified that there was not much talking during the ride, while Todd Scruggs testified that he and Cornett were laughing and joking.

Smith testified that Scruggs urged Magluilo not to shoot her. Scruggs contradicted Smith on that point.

Smith and Scruggs' efforts to get a ride from Wheat were independent from Magluilo's efforts to do the same.

Smith testified that, in the days following the shooting, Scruggs supplied her with methamphetamine. Scruggs, however, testified that Smith supplied him with methamphetamine during that time frame.

Magluilo stated that he really did not like Cornett for various reasons, and he was concerned about encountering Cornett because Cornett would try to fight him "or something like that" and had threatened to kill him "or something like that."

One of the interviewing officers noted that it would have been a shorter walk to go back to the Hilton and retrieve his truck than to walk to 1070 Boulevard Street.

Coates testified that, on the night in question, she was returning from New Orleans, Louisiana, by bus, and arrived in Shreveport at approximately 3:00 a.m. on September 9, 2015.

A civilian witness testified that, before law enforcement arrived at the scene, another civilian put the car's transmission in park because Cornett's foot on the brake was the only thing keeping the car from moving.

We note that Sergeant Mendels' statement that the bag had "a lot" of men's clothing in it is consistent with the defendant's statement that his bag had "all" his clothes in it.

An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is so viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Speed , 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied , 09-0372 (La. 11/6/09), 21 So.3d 299.

The defense brief states that Magluilo's DNA was not found on the gun. This is not precisely or necessarily true. The testimony of Audra Williams, the only DNA expert who testified, indicates that the DNA found on the gun included: (1) that of Chase Anderson, who was excluded as a suspect via alibi; and (2) a contributor of DNA who was unidentifiable - and thus could have been Magluilo.