On Application for Rehearing

PER CURIAM.
The opinion of June 11, 1999, is withdrawn and this opinion is substituted therefor.
William Crews was convicted in the Circuit Court of Morgan County of burglary in the first degree, a violation of § 13A-7-5, Ala.Code 1975; robbery in the first degree, a violation of § 13A-8-41; and robbery in the third degree, a violation of § 13A-8-43. He was sentenced, as a habitual offender, to two terms of life imprisonment without the possibility of parole and to a term of 15 years’ imprisonment; these three sentences were to be served concurrently. On December 20, 1996, the Court of Criminal Appeals issued an opinion reversing the convictions and remanding, holding that the State had violated the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Upon the State’s application for rehearing, the Court of Criminal Appeals, on November 14, 1997, withdrew its December 20, 1996, opinion and affirmed the convictions, by an unpublished memorandum (with a dissenting opinion by Judge Baschab). Crews v. State, 797 So.2d 1117 (Ala.Crim.App.1997). Crews’s subsequent application for rehearing was overruled. This Court granted review to address the merits of two of the four arguments contained in Crews’s certiorari petition.
Crews first claims that the Court of Criminal Appeals erred in affirming the trial court’s denial of his Batson v. Kentucky motion challenging the composition of the jury. He says the State’s reasons for striking two of the three black members of the jury venire were not race-neutral and were a pretext. According to the record, the State struck juror number 11, a black male named A.D.Y., and juror number 14, a black female named S.D.E.
*1121 As this Court noted in Branch v. State, 526 So.2d 609 (Ala.1987), the initial burden is on the defendant alleging that the State used its peremptory challenges in a discriminatory manner. Once that party has established a prima facie case, it is presumed that the peremptory strikes were used to improperly discriminate against jurors. The burden then shifts to the State to show a “clear, specific, and plausible nondiscriminatory explanation of a specific characteristic that affected the decision to challenge,” and this explanation must relate to the particular case being tried. Branch v. State, 526 So.2d at 623.
This Court in Branch listed nine kinds of evidence that can lead to an inference of discrimination. Crews established a prima facie case of discrimination by showing that the prosecutor had a pattern of striking prospective black jurors and that the prosecutor used the State’s peremptory challenges to dismiss two of the three black prospective jurors. The burden then fell on the State to give race-neutral reasons for striking those black venire-members.
The State explained that it struck prospective juror number 11, A.D.Y., a black male, because local police had informed the prosecutor that A.D.Y. had exhibited a bad attitude toward police in the past. Hostility toward law enforcement can be a race-neutral reason for striking a prospective juror, Stephens v. State, 580 So.2d 11, 19 (Ala.Crim.App.1990). Crews never challenged the information cited by the State as the basis for its strike. Based on this, we conclude that the trial court’s ruling on this challenge was not clearly erroneous.
The State explained that it struck prospective juror number 14, S.D.E., a black female, because (1) she had a family member who worked in law enforcement and (2) she had been a defendant in a civil action and the prosecutor felt this fact might make her more likely to identify with the defendant in this criminal case.
In regard to the first reason, we note that S.D.E. did, on voir dire examination, answer that she had a first cousin who had formerly worked with the Decatur Police Department. The State asked her nothing further. Although the State listed S.D.E.’s relation to law enforcement as a reason for striking her, it allowed M.S.T., who is white, to serve on the jury, even though she indicated that her brother is a state trooper. We find this reason given by the State for striking S.D.E. to be suspect.
However, we find the second reason — that S.D.E. had been a defendant in a civil action — to be a race-neutral reason for striking her. The State explained this second reason for striking S.D.E. in the following statement by the prosecutor:
“My opinion is, Judge, over the years, that people who have been sued tend to have a — some empathy for defendants, in that they have been charged, too, and usually — particularly, civil defendants have a tendency to believe that they have been wrongfully charged.”
The record shows the following statement by the trial court in regard to prospective juror S.D.E.: “She said that Lorch’s Diamond Center had taken her to small claims court.” This statement by the trial court certainly shows that S.D.E. had been a defendant in a civil case. However, Crews argues that the State’s reason was a pretext. In support of this argument, Crews contends that the State did not strike white veniremembers who shared the same characteristic, i.e., white venire-members who had been defendants in civil actions. However, a thorough review of the record shows that the State struck the only two veniremembers who had person *1122 ally been defendants in civil actions— S.D.E. and W.A.M., who was white. Of the other white veniremembers listed by Crews as sharing the same characteristic, two had been involved in domestic actions, one had participated in a civil action with his company, one had been involved in a class action, and the others were struck by the defendant. In reviewing a trial court’s ruling on a Batson challenge, an appellate court may rely on a valid reason when both suspect reasons and valid reasons have been given. Della-Calce v. State, 654 So.2d 54 (Ala.Crim.App.1994); Talley v. State, 687 So.2d 1261 (Ala.Crim.App.1996). The prosecutor gave a valid race-neutral reason for striking S.D.E.; therefore, we cannot say that the trial court’s ruling was clearly erroneous.
Crews also argues that the trial court erred by conducting its sentencing hearing immediately after his conviction even though he had just received notice that the State intended to proceed under the Habitual Felony Offender Act (“HFOA”). Crews was sentenced within 15 minutes of receiving notice of the State’s intent. Before the sentencing hearing began, the following exchange occurred:
“The Court: You have had, I believe, now an opportunity to look over the State’s motion with your client?
“Defense counsel: Yes. Judge, for the record, I was provided a copy of this motion by the State about 10 or 15 minutes ago and this is the first time I have seen it. My client has asked me to request to this Court a later sentencing date to provide me an opportunity to conduct an investigation into these convictions.
“Prosecutor: Judge, our response to that would be we have the records. They are properly certified. They show three prior convictions. Of course, they were only provided 15 — they got a copy of them 15 minutes ago because that’s about the time he was convicted.
“We don’t see what need there would be — if there were some objection or some denial that he had them, it would be different. But just to conduct an investigation, I don’t see any reason to postpone sentencing. And we ask the Court to proceed.
“The Court: All right. I am going to overrule his request to defer sentencing. I will allow you, if he wishes to do so, to offer any evidence that you wish to offer if you have a challenge to any of these convictions.
“But the records, in and of themselves, the judgment entries and sentencing orders in each case are properly certified and, in every respect, appear to be in proper form and properly admissible. So I think where that puts you is in a situation, if he has got evidence to show that any one of these, for some reason, is invalid or something is not reflected on the face of them, he can certainly offer that.
“Defense counsel: Yes, sir. Well, Judge, I would just say this. My client is not an attorney. He doesn’t know the legal ins and outs of convictions and what not. And all I have is what the State has produced [for] me. So, based on that, Judge, with the Court’s refusing to give us additional time, I don’t have any evidence to present.”
Rule 26.6(b)(3)(ii),, Ala. R.Crim. P., provides:
“At a reasonable time prior to the hearing, the defendant shall be given notice of the prior conviction or convictions upon which the state intends to proceed.”
This Court held in Connolly v. State, 602 So.2d 452, 454 (Ala.1992), that a *1123 “[d]etermination of the ‘reasonableness’ of the notice period is left to the trial judge’s discretion, because the trial judge is present and is familiar with the circumstances of the case.” However, as the clear language of Rule 26.6 suggests, a trial court’s discretion is subject to the “rules of reasonableness, fair play, and due process.” Capps v. State, 630 So.2d 486, 489 (Ala.Crim.App.1993).
The Court of Criminal Appeals held in Bogan v. State, 607 So.2d 322 (Ala.Crim.App.1992), that five minutes’ notice of the State’s intention to invoke the HFOA was not reasonable because giving the defendant such short notice denied the defendant the opportunity to inquire into the prior felonies relied on by the State. As stated in Capps, supra, the statute does not set out a specific time that will be considered reasonable. This Court will not set a specific time now. However, we do hold that in this case the requirement of reasonableness set out in Rule 26.6 was not met.
The judgment of the Court of Criminal Appeals is affirmed to the extent it affirms Crews’s convictions. It is reversed insofar as it affirms his sentences. The case is remanded for the Court of Criminal Appeals to order a new sentencing hearing that will comply with Rule 26.6(b)(3)(ii), Ala. R.Crim. P.
APPLICATION FOR REHEARING DENIED; OPINION OF JUNE 11, 1999, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, and ENGLAND, JJ., concur.
LYONS and JOHNSTONE, JJ., concur in part and concur in the result in part.
BROWN, J., recuses herself.*