On Application for Rehearing

KELLUM, Judge.
The unpublished memorandum issued on June 15, 2012, is withdrawn and the following opinion is substituted therefor.
Reginald Tyrone Lightfoot was convicted of trafficking in cocaine, a violation of § 13A-12-231(2), Ala.Code 1975, and of unlawful possession of marijuana in the second degree, a violation of § 13A-12-214, Ala.Code 1975. For the trafficking conviction, he was sentenced to 15 years’ imprisonment and was ordered to pay a $100 fee to the Alabama Forensic Services Trust Fund, see § 36-18-7(a), Ala.Code 1975, a $1000 penalty under the Demand Reduction Assessment Act, see § 13A-12-281, Ala.Code 1975, and fines totaling $75,000 pursuant to §§ 13A-12-231(2)a. and 13A-12-23K13), Ala.Code 1975. For the possession conviction, he was sentenced to one year’s imprisonment and was ordered to pay a $500 fine.
The evidence adduced at trial indicated the following. On January 18, 2009, at approximately 4:00 a.m., Blake Dean, a patrol officer with the Huntsville Police Department, executed a traffic stop of a vehicle that had “swerved a few times across the line and had no tag light.” (R. 123.) The vehicle was being driven by Lightfoot; Brandy Newberry was a passenger in the vehicle. When Officer Dean approached the vehicle, he smelled the odor of marijuana emanating from inside the vehicle. When asked about the odor, Lightfoot said that he had been in a nightclub. Lightfoot also told Officer Dean that he had a pistol in the vehicle and that he had a permit for the pistol. Officer Dean then had Lightfoot and Newberry get out of the vehicle, and he searched the vehicle, finding what was later determined to be 42.4 grams of cocaine and 21.3 grams of marijuana in a purse on the passenger-side floorboard, and finding a pistol in the cen *437 ter console. Officer Dean first questioned Newberry about the narcotics. Based on her responses, he then, after advising Lightfoot of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), questioned Lightfoot about the narcotics. Lightfoot told Officer Dean that when he first saw Officer Dean’s emergency lights, he got the cocaine and marijuana out of the center console of the vehicle and gave them to Newberry, who put them in her purse.
After both sides rested and the trial court instructed the jury on the applicable principles of law, the jury convicted Light-foot of trafficking in cocaine and of unlawful possession of marijuana in the second degree as charged in the indictment. This appeal followed.
I.
Lightfoot contends that the trial court erred in denying his motion made pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He argues that the State exercised its peremptory strikes in a racially discriminatory manner and that the trial court erred in finding that he had failed to establish a prima facie case of discrimination and not requiring the State to provide its reasons for the strikes. We disagree.
The record reflects that there were 30 prospective jurors on the venire. Of those 30, 21 were Caucasian, 8 were African-American, and 1 was listed on the venire list as “A,” signifying Asian. The State was afforded nine peremptory strikes and the defense eight peremptory strikes; the State’s ninth strike was the alternate juror. The State struck five African-Americans and four Caucasians; the defense struck seven Caucasians and the sole Asian. The jury consisted of nine Caucasians and three African-Americans. After the jury was struck, but before it was sworn, the following occurred:
“THE COURT: Do we have any motions?
“[Defense counsel]: Yes, sir. At this time I would make the motion to dismiss this panel, based on a Batson motion. The State has used five of its nine strikes — the majority of its nine strikes — to strike black members of the Jury from the panel. And as I recall the voir dire questioning, I don’t remember but one with a possible — that they would have a possible reason for doing so other than the color of their skin, Your Honor.
“THE COURT: I think that courts have found that numbers alone are not sufficient to shift the burden to the State to offer a reason for a peremptory challenge. Do you have any other basis for your motion?
“[Defense counsel]: Your Honor, the voir dire questions, as they were asked and answered — they were answered except, again, as I remember, one of the strikes in particular — they were all answered on a pretty equal, or equivalent, basis, by both blacks and whites. And it appears as though the choice has been made, based on the way the State has struck the black members of the Jury, based on the color of their skin rather than the questioning and the answers received in questioning on voir dire.
“THE COURT: Who is the one strike in particular you are referencing?
“[Defense counsel]: I would be referring right now to No. 26—
“THE COURT: And what is your particular—
“[Defense counsel]: — who had a similar charge against her.
“THE COURT: That would appear, in my opinion, to be a race-neutral reason.
*438 “[Defense counsel]: That is what I’m saying.
“THE COURT: With the exception of her, you mean?
“[Defense counsel]: With the exception.
“THE COURT: I do not find that the Defense has made a prima facie case that would justify shifting the burden to the State to offer peremptory challenges [sic], based on Batson.”
(R. 102-04.)
“When reviewing a trial court’s ruling on a Batson motion, this court gives deference to the trial court and will reverse a trial court’s decision only if the ruling is clearly erroneous.” Yancey v. State, 813 So.2d 1, 3 (Ala.Crim.App.2001). “ ‘ “[A] finding is ‘clearly erroneous’ when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” ’ ” Fletcher v. State, 703 So.2d 432, 436 (Ala.Crim.App.1997) (quoting Davis v. State, 555 So.2d 309, 312 (Ala.Crim.App.1989), quoting in turn Powell v. State, 548 So.2d 590, 594 (Ala.Crim.App.1988), aff'd, 548 So.2d 605 (Ala.1989)).
In evaluating a Batson claim, a three-step process must be followed:
“First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. [Batson,] 476 U.S., at 96-97. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Id., at 97-98. Third, in light of the parties’ submissions, the trial court must determine whether the defendant has shown purposeful discrimination. Id., at 98.”
Miller-El v. Cockrell, 537 U.S. 322, 328-29, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).
In the first step of the process, the step at issue here, “[t]he party alleging discriminatory use of a peremptory strike bears the burden of establishing a prima facie case of discrimination.” Ex parte Brooks, 695 So.2d 184, 190 (Ala.1997). “In addition to showing that the State used peremptory challenges to remove members of a cognizable group ... and relying upon the fact that peremptory strikes permit discrimination, a claimant also must show that these facts and any other relevant facts raise an inference that the prosecutor used his strikes in a discriminatory manner.” Madison v. State, 718 So.2d 90, 101 (Ala.Crim.App.1997). “The facts and circumstances necessary to establish a pri-ma facie case of purposeful discrimination in the jury selection process will, of course, vary from case to case, depending on the particular facts and circumstances involved.” Kidd v. State, 649 So.2d 1304, 1311 (Ala.Crim.App.1994). While it is true the striking of one person for a racial reason is a violation of the principles of Batson and grounds for reversal, see Williams v. State, 548 So.2d 501, 507 (Ala.Crim.App.1988), it is equally true that “[m]erely showing that the challenged party struck one or more members of a particular race is not sufficient to establish a prima facie case.” Edwards v. State, 628 So.2d 1021, 1024 (Ala.Crim.App.1993).
In Ex parte Branch, 526 So.2d 609 (Ala.1987), the Alabama Supreme Court provided a nonexclusive list of relevant circumstances to consider in determining whether a prima facie case of discrimination has been established:
“The following are illustrative of the types of evidence that can be used to raise the inference of discrimination:
“1. Evidence that the ‘jurors in question share[d] only this one characteristic — their membership in the group— and that in all other respects they *439 [were] as heterogeneous as the community as a whole.’ [People v.] Wheeler, 22 Cal.3d [258,] 280, 588 P.2d [748,] 764, 148 Cal.Rptr. [890,] 905 [ (1978) ]. For instance ‘it may be significant that the^ persons challenged, although all black, include both men and women and are a variety of ages, occupations, and social or economic conditions,’ Wheeler, 22 Cal.3d at 280, 583 P.2d at 764, 148 Cal.Rptr. at 905, n. 27, indicating that race was the deciding factor.
“2. A pattern of strikes against black jurors on the particular venire; e.g., 4 of 6 peremptory challenges were used to strike black jurors. Batson, 476 U.S. at 97,106 S.Ct. at 1723.
“3. The past conduct of the state’s attorney in using peremptory challenges to strike all blacks from the jury venire. Swain[ v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) ].
“4. The type and manner of the state’s attorney’s questions and statements during voir dire, including nothing more than desultory voir dire. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Wheeler, 22 Cal.3d at 281, 583 P.2d at 764,148 Cal.Rptr. at 905.
“5. The type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions. Slappy v. State, 503 So.2d 350, 355, (Fla.Dist.Ct.App.1987); People v. Turner, 42 Cal.3d 711, 726 P.2d 102, 230 Cal.Rptr. 656 (1986); People v. Wheeler, 22 Cal.3d 258, 583 P.2d 748, 764, 148 Cal.Rptr. 890 (1978).
“6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or similar manner; e.g., in Slappy, a black elementary school teacher was struck as being potentially too liberal because of his job, but a white elementary school teacher was not challenged. Slappy, 503 So.2d at 352 and 355.
“7. Disparate examination of members of the venire; e.g., in Slappy, a question designed to provoke a certain response that is likely to disqualify a juror was asked to black jurors, but not to white jurors. Slappy, 503 So.2d at 355.
“8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike blacks from the jury. Batson, 476 U.S. at 93, 106 S.Ct. at 1721; Washington v. Davis, 426 U.S. [229] at 242, 96 S.Ct. [2040] at 2049 [(1976)].
“9. The state used peremptory challenges to dismiss all or most black jurors. See Slappy, 503 So.2d at 354, Turner, supra.”
526 So.2d at 622-23.
Lightfoot argues on appeal, as he did in the trial court, that the State used five of its nine peremptory strikes against African-American prospective jurors, that there was no apparent basis for four of those strikes,[1] and that the African-Americans who were struck answered questions the same or similarly as did Caucasians who were not struck, thus establishing disparate treatment. This evidence, Light-foot concludes, establishes a prima facie case of racial discrimination. We note that Lightfoot does not argue on appeal, nor did he argue to the trial court, that the struck jurors shared only the charac *440 teristic of race, that there was a lack of meaningful voir dire directed at African-American prospective jurors, or that the prosecutor had a history of using peremptory challenges in a manner that discriminated against African-Americans.
It is undisputed that the State used five of its nine peremptory strikes against African-Americans. It is equally undisputed that defense counsel believed there was no “possible reason” for four of those strikes. (R. 102.) “However, statistics and opinion alone do not prove a prima facie case of discrimination.” Woods v. State, 845 So.2d 843, 845 (Ala.Crim.App.2002). The only other circumstance cited by Lightfoot as establishing a prima face case of discrimination is alleged disparate treatment of African-Americans and Caucasians. He makes several arguments regarding what he believes constitutes disparate treatment; we address each in turn.
Lightfoot alleges that the State struck two African-Americans, specifically Jurors No. 20 and No. 25, who provided during roll call of the venire their biographical information, i.e., their name, their spouse’s name, their occupation, and their spouse’s occupation but who answered no questions during voir dire, while the State did not strike three Caucasian jurors who provided their biographical information during roll call, but also did not answer any questions during voir dire. This is largely true. Jurors No. 2, No. 22, No. 23, and No. 24, all Caucasians who were not struck and who sat on Lightfoot’s jury, provided their biographical information during roll call but did not answer any questions during voir dire. However, Juror No. 7, a Caucasian who was struck by the State, also provided her biographical information during roll call but did not answer any questions during voir dire. Both African-American and Caucasian prospective jurors who had not answered any questions during voir dire were struck by the State. Therefore, we cannot say there was disparate treatment in this regard.
Lightfoot also argues that the State struck Juror No. 14, an African-American who indicated that her cousin had been arrested for a drug-related crime,[2] and Juror No. 28, an African-American pastor who indicated that he had worked with many people who had been arrested for drug-related crimes, but did not strike Jurors No. 3 and No. 12, Caucasians who also indicated that they had family members (a nephew and a niece, respectively) who had been arrested for drug-related crimes, or Juror No. 11, a Caucasian who indicated that his son had had a drug problem and that he had adopted children whose biological parents were drug addicts. Again, this is true. However, the State also did not strike Juror No. 9, an African-American who indicated that his brother had been arrested for a drug-related crime, Juror No. 17, an African-American who indicated that her daughter had had a drug problem, or Juror No. 30, an African-American who indicated that both her sister and her nephew had had drug problems. And the State did strike Juror No. 27, a Caucasian who indicated that her nephew had had a drug problem and was in prison. Therefore, again, we cannot say that there was disparate treatment in this regard.
Under the circumstances in this case, we conclude that Lightfoot failed to establish a prima facie case of racial discrimination. Therefore, the trial court properly denied Lightfoot’s Batson motion.
*441 II.
Lightfoot also contends that the trial court erred in applying the firearm enhancement in § 13A-12-231(13), Ala.Code 1975, to his sentence for the trafficking conviction. He argues that application of the enhancement ran afoul of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny because, he says: (1) the enhancement was not charged in the indictment; (2) he did not receive notice, a reasonable time before trial, of the State’s intent to seek application of the enhancement; and (3) his possession of a firearm was not proven to, or found by, the jury beyond a reasonable doubt.
The record reflects that, at the beginning of trial, just before the venire was brought into the courtroom, the State requested that the trial court instruct the jury on the firearm enhancement in § 13A-12-231(13) and allow the jury to determine its applicability. The record contains no notice to Lightfoot from the State of its intent to seek application of the enhancement before the State requested the jury instruction at the beginning of trial. Lightfoot objected to the State’s requested instruction on the ground that the enhancement was “not a part of the indictment and we were not notified that we would be defending that.” (R. 37.) The trial court did not rule on the State’s request or Lightfoot’s objection, stating instead “I haven’t decided what I’m going to do yet.” (R. 37.) The record reflects no further discussion of the requested jury instruction, Lightfoot’s objection, or the enhancement. In addition, the trial court did not instruct the jury on the enhancement, and Lightfoot lodged no objection to the trial court’s failure to instruct the jury on the enhancement.
At the sentencing hearing, the trial court sentenced Lightfoot to a total of 15 years’ imprisonment for the trafficking conviction, which included the 5-year enhancement in § 13A-12-231(13) for possession of a firearm during the commission of the crime, and ordered Lightfoot to pay fines totaling $75,000 — $50,000 for his trafficking conviction under § 13A-12-231 (2)a., plus an additional $25,000 for possession of a firearm during the commission of the crime under § 13A-12-231(13). Lightfoot objected to the application of the sentence enhancement but not on the grounds he now raises on appeal.[3] However, Lightfoot filed a timely motion to reconsider his sentence, in which (1) he argued that application of the firearm enhancement to his sentence for the trafficking conviction violated Apprendi and its progeny because the jury did not find, beyond a reasonable doubt, that he possessed a firearm during the commission of the crime, and (2) he reiterated the argument he had made previously that he had not received notice, a reasonable time before trial, of the State’s intent to seek application of the enhancement. The trial court denied the motion.
In Apprendi, the United States Supreme Court held that “[ojther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.” 530 U.S. at 490. In Poole v. State, 846 So.2d 370 (Ala.Crim.App.2001), this Court analyzed the holding in Apprendi and its impact on Alabama’s sentence-enhancement statutes, which op *442 erate to increase the statutory maximum sentence for a crime. This Court held that although such sentence enhancements must be proven to a jury beyond a reasonable doubt under Apprendi, they do not have to be charged in an indictment. 846 So.2d at 381-87. This Court also held, however, that Apprendi required pretrial notice of the State’s intent to seek application of such enhancements:
“Although we do not believe it is necessary, or even the better practice, to charge any applicable sentencing enhancement in the indictment, a defendant must be given notice that the State intends to seek an additional penalty under § 13A-12-250 and/or § 13A-12-270. This notice requirement is sufficient to comply with the requirements of due process. Art. I, § 6, Ala. Const.1901. This view is also consistent with our caselaw on the application of the Habitual Felony Offender Act. See Connolly v. State, 602 So.2d 452 (Ala.1992), and Rule 26.6(b)(3)(ii), Ala. R.Crim. P. Rule 26.6(b)(3)(h) states: ‘At a reasonable time prior to the [sentencing] hearing, the defendant shall be given notice of the prior conviction or convictions upon which the state intends to proceed.’ Because Apprendi mandates that any fact that increases the sentence be submitted to a jury, we believe that notice of intent to seek a sentencing enhancement should be given at a reasonable time before the start of the trial.”
846 So.2d at 387-88 (footnote omitted). Finally, this Court held that an Apprendi violation is not a structural defect but is a constitutional defect that must be timely objected to in the trial court in order to be reviewed on appeal and that is subject to a harmless-error analysis. 846 So.2d at 380-81.
Based on Poole, Lightfoot’s argument that the enhancement in § 13A-12-231(13) was improperly applied to his sentence because it had not been charged in the indictment is clearly meritless because the enhancement did not have to be charged in the indictment. However, Lightfoot’s arguments that the enhancement was improperly applied to his sentence because he had not received notice, a reasonable time before trial, of the State’s intent to seek application of the enhancement and because the enhancement was not proven to the jury beyond a reasonable doubt are meritorious.
The record affirmatively reflects that the jury was not instructed on the enhancement and returned no verdict finding beyond a reasonable doubt that Light-foot was armed with a firearm during the commission of the crime. The record also reflects that Lightfoot did not receive notice before trial of the State’s intent to seek application of the enhancement. Rather, Lightfoot was not notified until just before voir dire began, when the State requested that the jury be instructed on the enhancement.
There is no Alabama case specifically addressing what constitutes reasonable pretrial notice under Apprendi and Poole; in Poole, this Court simply held, as noted above, that notice “be given at a reasonable time before the start of the trial.” 846 So.2d at 388. However, as this Court also noted in Poole, the notice requirement under Apprendi is consistent with Alabama caselaw regarding application of the Habitual Felony Offender Act (“the HFOA”). See Rule 26.6(b)(3)(ii), Ala. R.Crim. P. In this regard, the Alabama Supreme Court has held that generally, the “[determination of the ‘reasonableness’ of the notice period is left to the trial judge’s discretion,” Connolly v. State, 602 So.2d 452, 454 (Ala.1992), although that discretion “is subject to the ‘rules of reasonableness, fair play, and due process.’ ” *443 Ex parte Crews, 797 So.2d 1119, 1123 (Ala.2000) (quoting Capps v. State, 630 So.2d 486, 489 (Ala.Crim.App.1993)). Both this Court and the Alabama Supreme Court have held that notifying a defendant of the State’s intent to seek sentence enhancement under the HFOA only moments before the sentencing hearing is scheduled to begin is not reasonable. See Ex parte Crews, 797 So.2d at 1123 (holding that notice 15 minutes before sentencing hearing began was not reasonable); and Bogan v. State, 607 So.2d 322, 324-25 (Ala.Crim.App.1992) (upholding trial court’s refusal to sentence defendant under HFOA where State provided notice only five minutes before the sentencing hearing began).
The same is true for the pretrial notice required when the State seeks application of 'other sentence enhancements that fall under the holding in Apprendi. In this case, it is clear that Lightfoot did not receive notice of the State’s intent to seek to apply the firearm enhancement in § 13A-12-231(13) until only moments before the trial began. That notice was not reasonable.
Therefore, because the firearm enhancement in § 13A-12-231(13) was not proven to a jury beyond a reasonable doubt and because Lightfoot did not receive notice of the State’s intent to seek application of that enhancement a reasonable time before trial began, the trial court’s application of the enhancement to Lightfoot’s sentence was in violation of Apprendi However, that does not end our analysis.
As noted in Poole, an Apprendi violation is subject to a harmless-error analysis. Indeed, this Court has held that where application of a sentence enhancement does not increase a defendant’s sentence beyond the statutory maximum, any Apprendi error is harmless. See Jones v. State, 853 So.2d 1036, 1038 (Ala.Crim.App.2002) (“Jones’s total sentence was within the statutory range for unlawful distribution of a controlled substance .... Therefore, any error in enhancing Jones’s sentence in violation of Apprendi was harmless.”), and Pearson v. State, 794 So.2d 448, 449 (Ala.Crim.App.2001) (“[B]ecause the application of the enhancements did not increase the appellant’s sentence beyond the statutory maximum for unlawful distribution of a controlled substance, any error was harmless, and the Supreme Court’s decisions in Jones [v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999),] and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), do not require that the enhancement portions of the sentence be set aside.”).
With respect to Lightfoot’s prison sentence, as noted above, Lightfoot was sentenced to a total of 15 years’ imprisonment for his trafficking conviction, a term that included the 5-year enhancement in § 13A-12-231(13). Trafficking in cocaine is a Class A felony, see § 13A-12-231(12), subject to imprisonment for life or not more than 99 years’s imprisonment or less than 10 years’ imprisonment, see § 13A-5-6(a)(1), Ala.Code 1975. Lightfoot’s sentence was well within the statutory range for trafficking in cocaine. Therefore, any Apprendi errors in not providing Lightfoot with pretrial notice of the enhancement and in not proving the enhancement to the jury beyond a reasonable doubt were harmless with respect to Lightfoot’s 15-year prison sentence.
With respect to Lightfoot’s fines totaling $75,000, however, we must conclude that the Apprendi errors were not harmless. As Lightfoot points out in his application for rehearing, although this Court has never specifically applied the holding in Apprendi to criminal fines, only a few days after this Court initially affirmed this case by an unpublished memo *444 randum, the United States Supreme Court issued its opinion in Southern Union Co. v. United States, — U.S. —, —, 132 S.Ct. 2844, 2357, 183 L.Ed.2d 318 (2012), in which the Court held “that the rule of Apprendi applies to the imposition of criminal fines.” Applying that holding here requires that this case be remanded.
Section 13A-12-231(2)a. mandates a fíne of $50,000 for a conviction of trafficking in cocaine if the amount of cocaine “[i]s 28 grams or more, but less than 500 grams.” Section 13A-12-231(13) mandates an additional $25,000 fine if the defendant possessed a firearm during the commission of the crime. Lightfoot was indicted for trafficking in “28 grams or more of cocaine.” (C. 13.) As noted above, Lightfoot was not indicted for, or given notice of, the firearm enhancement in § 13A-12-231(13), and that enhancement was not proven to the jury beyond a reasonable doubt. Therefore, the jury’s verdict finding Lightfoot guilty of trafficking in cocaine as charged in the indictment authorized only the $50,000 fine in § 13A-12-231(2)a, and did not authorize an additional $25,000 fine pursuant to § 13A-12-231(13). The trial court, however, imposed fines on Lightfoot totaling $75,000 for the trafficking conviction — the $50,000 fine pursuant to the jury verdict finding Lightfoot guilty of trafficking in cocaine pursuant to § 13A-12-231(2)a., and an additional $25,000 fine pursuant to the trial court’s finding at sentencing that Lightfoot possessed a firearm during the commission of the crime under § 13A-12-231(13). Lightfoot’s fines totaling $75,000 exceeded the statutory maximum authorized by the jury’s verdict; thus, we must remand this case for those fines to be set aside and for the trial court to impose the $50,000 fine authorized by the jury’s verdict pursuant to § 13A-12-231 (2)a.
We also note that, although the trial court imposed a $100 Alabama Forensic Services Trust Fund fee pursuant to § 36-18-7(a), Ala.Code 1975, for the trafficking conviction, it did not impose that fee for the possession conviction. Section 36-18~7(a) provides:
“Beginning October 1, 1995, in addition to all fines, fees, costs, and punishments prescribed by law, there shall be imposed or assessed an additional fee of one hundred dollars ($100) on any conviction in any court of the state for drug possession, drug sale, drug trafficking, and drug paraphernalia offense as defined in Sections 13A-12-211 to 13A-12-260, inclusive.”
(Emphasis added.) Lightfoot’s possession conviction pursuant to § 13A-12-214, Ala. Code 1975, although a misdemeanor, falls within the scope of § 36-18-7(a). Therefore, the trial court erred in not imposing a $100 forensic fee for the possession conviction.
Based on the foregoing, we grant Light-foot’s application for rehearing. We affirm Lightfoot’s convictions for trafficking in cocaine and for second-degree unlawful possession of marijuana. However, we remand this case for the trial court to set aside the fines totaling $75,000 imposed for the trafficking conviction and to impose the $50,000 fine set out in § 13A-12-231(2)a., and to assess an additional $100 forensic fee pursuant to § 36-18-7(a) for the possession conviction. Due return shall be filed with this Court within 42 days of the date of this opinion.
APPLICATION FOR REHEARING GRANTED; UNPUBLISHED MEMORANDUM OF JUNE 15, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED AS TO CONVICTIONS; REMANDED WITH DIRECTIONS AS TO SENTENCING.*
*445 WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.

. Lightfoot conceded at trial, and concedes in his brief on appeal, that the State had a valid, race-neutral reason for striking Juror No. 26, who indicated during voir dire that she had a previous nolo contendere plea in Georgia for the same crime for which Lightfoot was on trial.

. The prosecutor asked several questions about drugs. In doing so, the prosecutor indicated that his questions should be considered to cover both illegal drugs and alcohol.

. Lightfoot argued at the sentencing hearing that although there was a pistol in the vehicle, nothing "associate[d] it with the possession of the drugs” and, thus, that the enhancement should not apply under the facts in his case. (R. 211.)

 Note from the reporter of decisions: On October 26, 2012, on return to remand, the Court of Criminal Appeals affirmed, without opinion.