Judgment rendered June 30, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 53,922-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                              Appellee

versus

CHAD DURHAM                                     Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 2019F56849

Honorable Bruce E. Hampton, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Sherry Watters

JOHN F. BELTON                       Counsel for Appellee
District Attorney

CLIFFORD R. STRIDER, III
LEWIS A. JONES
Assistant District Attorneys

* * * * *

Before STONE, COX, and THOMPSON, JJ.

**COX, J.**

This appeal arises from the Third Judicial District Court, Union Parish, Louisiana. Defendant, Chad Durham, ("Durham"), was unanimously convicted for possession of a Schedule II controlled dangerous substance ("CDS"), methamphetamine, in violation of La. R.S. 40:967. He was sentenced to serve two years at hard labor, with credit for time served, to run consecutively with a previous sentence after revocation of his probation. On appeal, Durham argues that insufficient evidence was produced at trial to support his conviction and the maximum imposition of two years is unconstitutionally excessive. For the following reasons, we affirm his conviction and sentence.

**FACTS**

On April 7, 2019, at approximately 1:20 a.m., Union Parish Deputies Joe Bryan ("Dep. Bryan") and Christopher Hughes ("Dep. Hughes") were on patrol near Old Ouachita Road after receiving information about drug trafficking in the area. The deputies then observed a silver sedan without a visible license plate or a license plate light pass them; based on this traffic violation, they then proceeded to stop the vehicle. At trial, Dep. Bryan testified that as he approached the car, he observed the driver "shuffling around and fumbling with something" to the right of him. Dep. Hughes also testified that when Dep. Bryan approached the vehicle, he witnessed Durham "pilfering through some stuff."

Durham identified himself and Myra Kelley ("Kelley"), who was in the passenger seat, and told Dep. Bryan that the two were just out "riding around." After Durham was unable to produce any form of ID or

registration, he informed Dep. Bryan that the car belonged to Kelley and that he was only driving. When Kelley was unable to produce any registration for the car, Dep. Bryan asked both to step out of the car. He noted that Durham appeared to be excessively nervous and continuously crossed his arms as if he were hugging himself. Both Dep. Bryan and Dep. Hughes stated that while Durham appeared to be nervous, he did not seem to be intoxicated. However, deputies stated that Kelley seemed to be highly impaired as her eyes were glazed over and she had trouble focusing and comprehending the situation.

After obtaining consent from both Durham and Kelley to search the car, Dep. Bryan testified that deputies Matt Ford ("Dep. Ford") and Chad Nolen were called in to assist with the search. Deputy Ford testified that he searched the passenger side of the vehicle where he found a man's wallet on the passenger side of the floor. Dep. Bryan stated that while Dep. Ford searched the passenger side of the vehicle, he searched the driver's side. During his search, he stated that in addition to finding a cigarette pack, he discovered that on the driver's side of the console, the carpet had been pulled back; inside of this area there was a piece of cellophane from a pack of cigarettes. Upon closer inspection, Dep. Bryan stated that he observed what appeared to be methamphetamines inside the folded cellophane and it appeared to have just been dropped behind the carpet.

Dep. Hughes then testified that after he advised both Durham and Kelley of their Miranda rights, both denied ownership of the drugs before they were arrested. Dep. Bryan then stated that he asked Kelley if she had anything else on her person and advised her that if she was found to have

3

contraband, she would face a second charge for introduction of contraband into a prison. At this point, Kelley then produced a wad of papers, including ID and medical insurance cards, several miscellaneous papers, and a small, clear, plastic bag with a white powdery substance, later identified as methamphetamine, from her pants. Dep. Bryan and Hughes testified that Kelley then told them that Durham had instructed her to take his wallet and to hide everything in it, and in response, she took items from the wallet and placed them in the front of her pants. The items produced from Kelley were photographed and Dep. Bryan stated that some of the items, particularly the medical insurance cards, appeared to have Durham's name printed on them, confirming Kelley's initial statement.

In testifying on Durham's behalf, Kelley testified that at the time of the offense, she had known Durham for almost a year and noted that although the two were friends, they had been intimately involved. Kelley stated that she purchased the vehicle from Durham a month prior to the offense and cleaned the car, removing all of Durham's belongings. She testified that she lived out of the car and would often smoke there and dispose of her cigarette wrappers on the floor of the car. Kelley also stated that on the day in question, she purchased methamphetamine prior to asking Durham to drive her car. When questioned as to why she had several papers and identification cards which appeared to belong to Durham in the front of her pants, Kelley stated that she lied to the arresting deputies about Durham ordering her to get rid of those items.

Kelley testified that when the two were pulled over, she grabbed Durham's wallet, which was located in a cubby hole underneath the radio,

4

along with the small bag of drugs and put the items in her pants because she wanted to ensure that at least one of them did not get arrested to prevent her car from being towed. Kelley stated that although she grabbed Durham's wallet, some of the items belonged to her, including the drugs. Kelley further stated that although the drugs and the cigarettes belonged to her, and that Durham did not smoke. Durham only reached for a cigarette to put in his mouth when Dep. Bryan approached the car because he was nervous. Kelley later stated that Durham was not an avid smoker, but would occasionally smoke or dip.

Kelley explained in her testimony that whenever she purchased drugs, it would typically last her several days. She stated that although she would dispose of her cigarette wrappers on the floor of her car, she would keep any drugs she had in whatever small plastic bag it came in. Kelley stated that prior to picking Durham up, she purchased a new bag of methamphetamine from an unknown person in Monroe. She ate some of the drugs before she picked Durham up and stated to both deputies at the time of the arrest and at trial that the only drugs she had were the ones initially found in her pants. Kelley explained that the amount found was the remainder of what she did not eat from earlier that night and that there were no other drugs in the car. At the conclusion of Kelley's testimony, the jury unanimously found Durham guilty of constructive possession.

On March 4, 2020, the trial court sentenced Durham to two years at hard labor, with credit for time served, and ordered the sentence to run consecutively with Durham's previous sentence after his probation was revoked. After review of Durham's pre-sentence investigation report

5

("PSI") and the sentencing guidelines in La. C. Cr. P. art. 894.1, the trial court noted that Durham was 22 years old and recited Durham's criminal background: a misdemeanor conviction for violation of a protective order, an arrest for domestic abuse battery which was pled down to disturbance of the peace, and at the time the instant offense was committed, Durham was on probation for aggravated assault with a firearm in which he was sentenced to seven years at hard labor, with all but one year suspended, and three years of supervised probation.

The trial court expressed its shock that Durham chose to commit a felony drug offense while on probation and that he had shown no remorse for his actions. Instead, he chose to blame Kelley. Given Durham's past criminal history of violence and the leniency afforded to him for his past convictions, the trial court stated that the only mitigating factor was Durham's age. The court then opined that there was undue risk that Durham would commit another crime if he was not incarcerated, that he would benefit best from a custodial environment, and that he was not likely to respond to probation unless incarcerated first.

## DISCUSSION

*Sufficiency of the Evidence*

On appeal, Durham first argues that the State failed to present sufficient evidence to convict him of either constructive or joint possession of methamphetamine because there was no evidence produced to show that he knew there were any drugs in the vehicle. In relying on Kelley's testimony, Durham first notes that of the two passengers in the vehicle at the time of the offense, Kelley was the only one found in actual possession of

6

the drugs in question. Moreover, Kelley admitted to both the arresting deputies and the trial court that she not only purchased and used the drugs prior to Durham driving the vehicle, but that she was the sole owner and possessor of the drugs.

Durham further maintains that his mere proximity to the area in which the drugs were found does not establish knowledge or impute possession to him. He contends that although he drove Kelley's vehicle, there is no evidence that he knew drugs were hidden in the carpet near the console. He argues that his mere proximity to the drugs and easy access to the area in which the drugs were hidden is insufficient to show that he had dominion or control over the drugs because without evidence of knowledge, the factor of proximity has no weight.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797. The Jackson standard, now legislatively embodied in La. C. Cr. P. art. 821, does not afford appellate courts with a means to substitute its own appreciation of the evidence for that of the fact finder. *Steines, supra*.

The *Jackson* standard also applies in cases involving both direct and circumstantial evidence. An appellate court which reviews the sufficiency

7

of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is viewed as such, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983).

Likewise, if a case rests essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *see also*, *State v. Mingo*, 51, 647 (La. App. 2 Cir. 9/27/17), 244 So. 3d 629, *writ denied*, 17-1894 (La. 6/1/18), 243 So. 3d 1064. The appellate court will review the evidence in the light most favorable to the prosecution and determine whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v. Garner*, 45,474 (La. App. 2 Cir. 8/18/10), 47 So. 3d 584, *writ not considered*, 12-0062 (La. 4/20/12), 85 So. 3d 1256.

In the absence of any internal contradiction or irreconcilable conflict with physical evidence, the testimony of the witness, if believed by the trier of fact, alone is sufficient support for a requisite factual conclusion. *State v. Elkins*, 48,972 (La. App. 2 Cir. 04/9/14), 138 So. 3d 769, *writ denied*, 14-0992 (La. 12/8/14), 152 So. 3d 438; *State v. Wiltcher*, 41,981 (La. App. 2 Cir. 05/09/07), 956 So. 2d 769. Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the

weight of the evidence, not its sufficiency. *State v. Allen*, 36, 180 (La. App. 2 Cir. 09/18/02), 828 So. 2d 622, *writ denied*, 02-2595 (La. 06/27/03), 847 So. 2d 1255. The appellate court neither assesses the credibility of witnesses nor reweighs evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 08/30/03), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

In the present case, Durham was convicted of possession of methamphetamine, a Schedule II CDS, in violation of La. R.S. 40:967(C). It is unlawful for any person to knowingly or intentionally possess a Schedule II controlled dangerous substance, such as methamphetamine, unless it was obtained directly or pursuant to a valid prescription or order from a practitoner, as provided in La. R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by the statute. La. R.S. 40:967(C). To convict a defendant of possession of a CDS, the State must prove that the defendant knowingly possessed an illegal drug. *State v. Broome*, 49,004 (La. App. 2 Cir. 4/9/14), 136 So. 3d 979, *writ denied*, 14-0990 (La. 1/16/15), 157 So. 3d 1127; *State v. Murphy,* 09-432 (La. App. 5 Cir. 11/24/09), 28 So. 3d 496, *writ denied,* 2010-0016 (La. 6/25/10), 38 So. 3d 334. Possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. "Actual possession" means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. *State v. Broome*, *supra*. The State need not prove the defendant

9

actually possessed the drugs, as evidence of constructive possession is sufficient. *State v. Simon*, 51,778 (La. App. 2 Cir. 1/10/18), 245 So. 3d 1149, *writ denied*, 2018-0283 (La. 11/5/18), 255 So. 3d 1052.

Constructive possession is established by evidence that the drugs were within the defendant's dominion and control and that the defendant had knowledge of its presence. *State v. Simon, supra.* Guilty knowledge is an essential element of possession of contraband and can be inferred from the circumstances. *State v. Toups*, 01-1875 (La. 10/15/02), 833 So. 2d 910; *State v. Simon, supra.* A defendant's mere presence in an area where drugs are located or association with one possessing drugs does not constitute constructive possession. *State v. Brisban*, 00-3437 (La. 2/26/02), 809 So. 2d 923. However, proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. *State v. Richardson*, 18-717 (La. App. 5 Cir. 9/4/19), 279 So. 3d 501, *writ denied*, 19-01722 (La. 7/2/20), 297 So. 3d 764.

Courts use several factors to determine whether a defendant exercised dominion and control to constitute constructive possession, including: (1) the defendant's knowledge that drugs were in the area, (2) the defendant's relationship with other persons found in actual possession, (3) the defendant's access to the area where the drugs were found, (4) evidence of drug paraphernalia or of recent drug use, and (5) the defendant's physical proximity to the drugs. *State v. Simon, supra.* Further, a defendant may be found to have been in joint possession even if the drug is in the physical custody of a companion if he willfully and knowingly shares with the other

the right to control of it. *State v. Moore*, 48,492 (La. App. 2 Cir. 11/20/13), 128 So. 3d 608, 612, *writ denied*, 13-3003 (La. 5/3014), 140 So. 3d 1175.

In the present case, we find that the State sufficiently established that Durham was in constructive possession of the methamphetamine found in the vehicle. Dep. Bryan and Dep. Hughes testified that they initially observed Durham fumbling and pilfering with something to the right of him near the center console and where the drugs were later found. However, when Dep. Bryan approached the driver's side of the vehicle, Durham stopped fumbling and was excessively nervous when speaking.

The deputies further testified that after they spoke to Kelley, who appeared highly intoxicated, both she and Durham consented to a search of the vehicle whereby a wallet was found on the passenger side floor and the cellophane wrapped methamphetamine was discovered near the center console underneath the carpet of the vehicle. Although both parties initially denied ownership of the drugs, Kelley eventually produced a small bag of methamphetamine amongst several ID and medical insurance cards, and other miscellaneous papers, which appeared to belong to Durham, from the front of her pants. Deputies testified that Kelley stated that the items belonged to Durham and that he gave her his wallet and ordered her to get rid of everything in it when they were pulled over.

In contrast, Kelley testified that she lied to the arresting deputies when they questioned her about the ownership of the drugs. Kelley stated that she lied to the deputies because she was afraid she would be arrested. She explained that after she and Durham were pulled over, she grabbed Durham's wallet, hoping that one of them would not be arrested to prevent

11

her car from being towed. Kelley further testified that she purchased the car from Durham a month prior to the offense and had cleaned the car so that the drugs found in the car and on her person belonged to her. Kelley then stated that she regularly used methamphetamine and smoked cigarettes, often leaving the cellophane wrapper on the floor of the car, but kept her drugs in the initial bag in which she purchased it. In contrast, she initially stated Durham did not smoke, yet when questioned why Durham was fumbling near the center console, she stated that Durham was reaching for a cigarette because he occasionally smoked and dipped.

At the outset, we note that while proximity alone is insufficient to establish constructive possession, we find that the circumstances of this case and the testimony presented at trial is sufficient to show that Durham constructively possessed the drugs. First, Durham and Kelley knew each other for almost a year and during this time had a brief, intimate relationship. Moreover, Durham previously owned the car in question before he sold it to Kelley, and it can therefore be reasonably concluded that he was familiar with the car before Kelley asked him to drive her on the night in question. Additionally, guilty knowledge of the presence of the drugs can be inferred because Durham was aware that Kelley was under the influence, which is the very reason she claimed to have asked him to drive her car. Durham's knowledge of and proximity to the drugs, coupled with the deputies' testimony of Durham fumbling in the area where the drugs were subsequently discovered was sufficient to establish that the drugs were in Durham's dominion and control.

In this case, the jury made a credibility determination and chose to believe the testimony provided by Dep. Bryan and Dep. Hughes, rather than Kelley. As previously stated, a jury's credibility determination is afforded great deference and in the absence of internal contradiction or irreconcilable conflict with the physical evidence, a witness's testimony, if believed by the trier of fact, is sufficient to support a requisite factual conclusion. Considering the evidence in the light most favorable to the prosecution, the evidence was sufficient for the jury to conclude that all elements of the charge of possession of methamphetamine was proven beyond a reasonable doubt. Durham's assignment of error is therefore without merit.

*Excessive Sentence*

In his second assignment of error, Durham alternatively argues that even if his conviction is affirmed, his sentence should be vacated and the case remanded for re-sentencing because the imposition of a two-year maximum sentence is constitutionally excessive. Durham contends that although the trial court considered his age as a mitigating factor, the two-year sentence was nevertheless inappropriate because the amount of methamphetamine involved was minimal. Durham also claims that because maximum sentences are reserved for the most egregious violations, the trial court erred in ordering that his sentence should be served consecutively since the severity of the sentence is not particularized to either him or the offense charged. We disagree.

Generally, appellate review to determine whether a sentence is constitutionally excessive is a two-pronged inquiry whereby the first prong considers whether the trial court took cognizance of the guidelines set forth

in La. C. Cr. P. art. 894.1, and the second prong considers constitutional excessiveness. *State v. Wing*, 51,857 (La. App. 2 Cir. 2/28/18), 246 So. 3d 711. However, in this case, no motion to reconsider sentence was filed, therefore, this Court's review is limited to the constitutional excessiveness of the sentence alone.[1] La. C. Cr. P. art. 881.1; *State v. Williams*, 51,667 (La. App. 2 Cir. 9/27/17), 245 So. 3d 131, *writ not cons.*, 18-0017 (La 8/3/18), 248 So. 3d 322; *State v. Turner*, 50,221 (La. App. 2 Cir. 1/20/16), 186 So. 3d 720, *writ denied*, 16-0283 (La. 2/10/17), 215 So. 3d 700.

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1. *State v. Mandigo*, 48,801 (La. App. 2 Cir. 2/26/14), 136 So. 3d 292, *writ denied*, 14-0630 (La. 10/24/14), 151 So. 3d 600. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Wing*, *supra*; *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166. The trial court maintains wide discretion in the imposition of sentences within statutory limits, and absent a showing of manifest abuse, an imposed sentence will not be set aside as excessive. *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081; *State v. Mandingo, supra.* Therefore, appellate review does not consider whether another sentence may have been more appropriate, but whether the trial

---

[1] *See* La. C. Cr. P. art. 881.1; *State v. Sewell*, 53, 571 (La. App. 2 Cir. 11/18/20), 307 So. 3d 362. Failure to file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude either the State or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

court abused its discretion. *State v. Dale*, 53,736 (La. App. 2 Cir. 1/13/21), 309 So. 3d 1031; *State v. Davis*, 50,149 (La. App. 2 Cir. 11/18/15), 181 So. 3d 200.

After a review of the record and consideration of the facts of the instant case, we are unable to say that the trial court abused its discretion in sentencing Durham. After reviewing the PSI, the trial court sentenced Durham to serve the maximum two years at hard labor and ordered the sentence to run consecutively with his prior conviction after revocation of probation with credit for time served. Although Durham argues that the sentence imposed was excessive, this Court's review of the record discloses no abuse of discretion regarding the length of the sentence imposed. The sentence fell within the statutory limits of La. R.S. 40:967(C)(1), which provides that the penalty for persons convicted for possession of a Schedule II CDS with an aggregate weight of less than two grams shall be imprisoned, with or without hard labor, for not more than two years and an optional fine of not more than $5,000.

Although maximum sentences are generally reserved for the worst offenses and offenders, *State v. Taylor*, 41,898 (La. App. 2 Cir. 4/4/07), 954, and several factors are used to determine whether a sentence is grossly out of proportion to the underlying crime,[2] we note that sentences must be individualized to the particular offender and to the particular offense committed. Notably, it is within the purview of the trial court to

---

[2] The following factors are used to determine whether a sentence, by its excessive length or severity, is grossly out of proportion to the underlying crime: (1) the nature of the offense and the offender, (2) a comparison of the punishment in the present case with the sentences imposed for similar crimes, (3) the legislative purpose for the punishment, and a comparison of the punishment provided for this crime in other jurisdictions.

particularize the sentence because it remains in the best position to assess the aggravating and mitigating circumstances presented by each case. Moreover, while the trial court must state the factual basis for the sentence imposed, La. C. Cr. P. art. 894.1(C), and consider the defendant's personal history, criminal record, the seriousness of the offense, and the likelihood of rehabilitation, there is no requirement that the trial court give particular weight to any one specific factor at sentencing. *State v. Boehm*, 51,229 (La. App. 2 Cir. 4/15/17), 217 So. 3d 596.

The record in this case reflects that the trial court took notice of the factors set forth in La. C. Cr. P. art. 894.1 and adequately articulated the considerations imposed. After a review of the PSI, the trial court sentenced Durham to serve the maximum two years at hard labor and ordered the sentence to run consecutively with Durham's prior conviction after revocation of probation with credit for time served. The trial court noted that the only mitigating factor was Durham's age but that Durham's criminal history included a misdemeanor conviction for violation of a protective order, an arrest for domestic abuse battery (which was pled down to disturbance of the peace), and a conviction for aggravated assault with a firearm. The trial court expressed that there was an undue risk that Durham would commit another offense because Durham, as a second felony offender, chose to commit another felony while on probation and showed no remorse for his actions. Given the criminal history, the trial court found that Durham was in need of correctional treatment.

On review of the record, the sentence imposed was not out of proportion to the offense given Durham's criminal history. Therefore, we

16

find that the trial court did not abuse its broad discretion when sentencing Durham and the sentence imposed is not constitutionally excessive.

## CONCLUSION

For the aforementioned reasons, Durham's conviction and sentence are affirmed.

**AFFIRMED.**